IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ELIZABETH QUINN BARNARD, and       Civ. No. 06-6265-HO
JEANIE SENIOR,

                             ORDER

         Plaintiffs,

   v.

ADVANCE PENSION PLAN, et al.,

         Defendants.


<u>Background</u>

Plaintiff Elizabeth Barnard and defendant The Oregonian

Publishing Company (The Oregonian) were parties to "regional

correspondent agreements" whereby Barnard prepared articles for

publication in The Oregonian newspaper.  The administrator for

The Oregonian's medical, dental, pension and 401(k) employee

benefits plans denied Barnard's applications for benefits

initially and on review.  Barnard filed this action for benefits

due and other relief under the Employee Retirement Income

Security Act (ERISA).  <u>See</u> 29 U.S.C. § 1132(a)(1).  Defendants

filed a motion for summary judgment.  Based on the agreement of

counsel, the court construes defendants' motion for summary judgment as a motion for partial summary judgment limited to Barnard's claim.  Barnard filed a motion for partial summary judgment that asks the court to resolve the question of defendants' liability.  Barnard filed a motion to strike the supplemental declaration of Thomas Whitehouse, Director of Human Resources for The Oregonian and administrator of The Oregonian's employee benefits plans.

Barnard and defendants dispute whether the administrator erred by determining that Barnard is ineligible for coverage under The Oregonian's plans because she was not an employee of The Oregonian within the meaning of the plans.  These parties further dispute whether defendants may rely in court on plan eligibility criteria not expressly addressed in the administrator's written decisions, and whether such criteria is satisfied.

When the evidence is viewed in the light most favorable to defendants, Barnard was an employee of The Oregonian within the meaning of ERISA and traditional agency law.  The parties' agreements to classify Barnard as an independent contractor were not waivers of ERISA plan benefits and do not control the question of whether Barnard was an employee of The Oregonian within the meaning of The Oregonian's ERISA plans.  In the circumstances of this case, the court properly considers the plan

2 - ORDER

criteria identified by defendants but not expressly addressed by the administrator.  When ambiguous plan terms are resolved in favor of Barnard, Barnard was not ineligible for eight of ten plans identified by defendants for the reasons asserted by defendants.  The challenged Whitehouse declaration is not subject to a motion to strike.  Therefore, defendants' motion for summary judgment, construed as a motion for partial summary judgment, is denied; Barnard's motion for partial summary judgment is granted in part and denied in part; and Barnard's motion to strike is denied.

## Motion to Strike

Whitehouse's supplemental declaration is not subject to a motion to strike.  Sidney-Vinstein v. A.H. Robins Co., 697 F.2d 880, 885 (9th Cir. 1983).  Barnard's objection to this evidence is well taken, however.  Whitehouse states that his letters denying Barnard's claims contain his opinions as to why Barnard is not entitled to benefits.  Whitehouse Supp. Decl., ¶¶ 2-4. The letters speak for themselves and the court will disregard Whitehouse's supplemental declaration.

## Motions for Summary Judgment

The judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c).

3 - ORDER

I.  Undisputed Facts

Barnard and The Oregonian entered into several "regional correspondent agreements" between March 1, 1999 and March 31, 2005.  Barnard Decl., ex. B.  The agreements typically specified one-year or six-month terms, and were terminable by either party upon 30 days notice.

The agreements provide that The Oregonian retained correspondent "as an independent freelance correspondent," to cover the news in the general area of Jackson, Josephine and southern Klamath counties.  Each agreement required that Barnard provide news articles to The Oregonian in a timely manner in return for a sum of money paid in equal monthly installments. The Oregonian also agreed to reimburse Barnard's reasonable expenses.  "Special projects undertaken by [Barnard], with prior agreement of The Oregonian, may be paid separately at a rate agreeable to [Barnard] and The Oregonian."  The agreements cover all works created on assignment, and all works submitted by Barnard, whether created as a result of the assignment.  The agreements required Barnard's work to be satisfactory in form and substance to The Oregonian, and to be submitted by the assigned due date.

The agreements further provide that Barnard's works are works-for-hire, and that The Oregonian owns all rights therein throughout the universe.  Further,

4 - ORDER

The Oregonian may require revision of the Works by
contributor after submission and reserves the right to
edit, revise . . . or otherwise modify the works.
Contributor will cooperate with The Oregonian's
revision and editing process.  The Oregonian has the
sole discretion to decide whether and when to publish
or use any Work.

Paragraph 8 of the agreements provides,

Contributor is an independent contractor and will not
be treated as an employee of The Oregonian for any
purpose, including but not limited to The Oregonian's
employee benefits, the Federal Insurance Contribution
Act, unemployment taxes and income tax withholding at
the source.

On May 31, 2005, The Oregonian exercised its right to

terminate the operative agreement effective July 31, 2005.

After the termination, Barnard applied for unemployment

benefits.  Through that process, Barnard learned that The

Oregonian paid unemployment taxes to the state on her behalf for

as long as she worked as a regional correspondent.  The Oregon

Employment Department granted her application for unemployment

insurance benefits.  In the spring of 2006, Barnard filed a Form

SS-8 with the Internal Revenue Service, asking the Service to

determine whether she was an employee of The Oregonian or an

independent contractor for purposes of federal income taxation.

On October 4, 2006, Barnard received a ruling from the IRS

stating that she was an employee for federal income tax purposes.

Barnard Decl., ex. H.  The IRS relied on its prior determination

that another regional correspondent of The Oregonian was an

employee, and not an independent contractor.  That determination

5 - ORDER

provides, <u>inter</u> <u>alia</u>,

> There are significant similarities between this case
> and Rev. Ru. 60-148, 1960-1 C.B. 391.  In the ruled
> case the newspaper correspondent, who was held to be an
> employee, covered news/special events and particular
> assignments within an assigned county, received a fixed
> monthly salary, did most of his work at home, had his
> submitted work subjected to revision or rejection by
> the newspaper (editors), and the newspaper could
> terminate his services for unprofessional conduct.  A
> similar level of direction and control (of the
> newspaper correspondent) occurred in the case we are
> now considering.

The administrator denied Barnard's June 12, 2006 claims for
benefits under The Oregonian's medical, dental, pension and
401(k) plans, based on his finding that Barnard is ineligible for
coverage because she is not an employee of The Oregonian as
defined by the respective plans.  Pl's ex. J.  In his denial
letters, the administrator cited to plan provisions and quoted
the independent contractor provision of the regional
correspondent agreements.  After reviewing the IRS determination
submitted by Barnard, Whitehouse denied Barnard's appeals for the
same reasons he denied Barnard's initial applications.  Pl's ex.
L.

The Oregonian has paid unemployment taxes for its regional
correspondents since the state conducted an audit in 1988.  The
Oregonian did not inform Barnard of this fact.

On or about January 1, 2006, The Oregonian hired its three
remaining regional contract correspondents as staff reporters.
///

6 - ORDER

II.  Discussion

A.  Standard of Review and Scope of Record on Review

Review of a plan administrator's denial of benefits under ERISA is de novo, unless the plan confers upon the administrator the right to interpret the plan or determine eligibility for benefits, in which case review is for abuse of discretion informed by any conflict of interest of the administrator that may appear in the record. Abatie v. Alta Health & Life Ins. Co., 458 F.3d 955, 963, 967 (9th Cir. 2006).

Under the de novo standard, the court reviews claims for benefits by looking to the terms of the plans and other manifestations of the parties' intent, without deferring to any party's interpretation. Firestone Tire and Rubber Co., v. Bruch, 489 U.S. 101, 112 (1989). Unresolved ambiguities in plan terms are resolved against the party responsible for the terms of the plan. See Kunin v. Benefit Trust Life Ins., Co., 910 F.2d 534, 540 (9th Cir. 1990); see also Salterelli v. Bob Baker Group Med. Trust, 35 F.3d 382, 386 (9th Cir. 1994). Under the de novo standard, the court may allow evidence not before the plan administrator when clearly necessary for adequate review. Mongeluzo v. Baxter Travenol Long Term Disability Benefit Plan, 46 F.3d 938, 944 (9th Cir. 1995).

Barnard and The Oregonian submitted evidence not referenced by the administrator to prove whether Barnard was an employee of

7 - ORDER

The Oregonian under the common law of agency.  Barnard objects to
The Oregonian's evidence.  The court must consider this evidence
to determine wether Barnard has standing to assert her ERISA
claim.  See Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318,
319, 328 (1992) (meaning of ERISA term "employee" incorporates
traditional agency law factual criteria).  Barnard's objection is
overruled.

Barnard further appears to argue that defendants may not
rely on plan terms not specifically addressed in the
administrator's letter denials.  Barnard specifically objects to
defendants' argument that Barnard was not an employee within the
meaning of certain plans because she received a flat payment as
compensation.  Another argument not expressly addressed in the
administrator's written denials is defendants' contention that
Barnard was ineligible for certain plans because she did not work
on a regularly scheduled basis.  Barnard relies on Glista v. Unum
Life Ins. Co. of American, 378 F.3d 113, 130 (1st Cir. 2004).  As
the Glista court noted, the courts of appeals do not uniformly
hold that defendants in actions to recover ERISA benefits may
never rely on plan provisions not specifically articulated in the
administrator's decision.  Id. at 130-31.

As noted, the administrator expressly found that Barnard was
not an employee of The Oregonian within the meaning of the plans.
The administrator referenced plan provisions defining or

referring to the term "employee," but did not reference all of the plans discussed in defendants' memorandum.  As discussed below, the court's consideration of defendants' arguments does not involve an exercise of discretion reserved to, but not undertaken by, the administrator.  In this circumstance in this circuit, defendants are not prohibited from relying on the arguments, <u>Vizcaino v. Microsoft Corporation</u>, 120 F.3d 1006, 1014 (9th Cir. 1997) (<u>en</u> <u>banc</u>) (remanding to the administrator to exercise discretion to interpret plan provision in the first instance), and the arguments are properly considered by this court when the de novo standard of review applies, <u>Mongeluzo</u>, 46 F.3d at 944.

B.  Standing Under ERISA

Apart from meeting ERISA plan eligibility requirements, Barnard must qualify as an employee under traditional agency law to have standing to sue for benefits under ERISA.  <u>Darden</u>, 503 U.S. at 323 (interpreting 29 U.S.C. § 1002(6)).

> In determining whether a hired party is an employee under the general common law of agency, we consider the hiring party's right to control the manner and means by which the product is accomplished.  Among the other factors relevant to this inquiry are the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party

9 - ORDER

is in business; the provision of employee benefits; and
the tax treatment of the hired party.

Darden, 503 U.S. at 323-24.  "[A]ll of the incidents of the
relationship must be assessed and weighed with no one factor
being decisive[.]"  Id. (citations omitted).

Viewed in the light most favorable to defendants, the
evidence establishes that Barnard was an employee of The
Oregonian under traditional law of agency.  Since 1960, the IRS
has determined that regional correspondents like Barnard are
employees, and the determination is essentially the same under
the Internal Revenue Code and regulations, traditional law of
agency and ERISA.  Vizcaino, 120 F.3d at 1009.  Review of the
undisputed facts in the case at bench reveals the existence of
several factors noted by the IRS in support of its determination
that another regional correspondent of The Oregonian was an
employee, rather than an independent contractor.  Barnard was
obliged to cover news and features in a designated geographic
area.  The regional correspondent agreements covered all works
submitted by Barnard, whether created on assignment.  The
agreements contemplated an ongoing relationship of certain
duration, terminable by the parties without penalty upon 30 days
written notice, and immediately terminable by The Oregonian for
noncompliance with professional standards of journalism.  The
Oregonian had the right to require Barnard to revise submitted
works, and could edit or modify such works and decide whether and

10 - ORDER

when to publish such works.  The Oregonian reimbursed Barnard for mileage, telephone and other job-related expenses, but required that Barnard furnish her own computer, fax machine, and camera. Barnard maintained a home office where she performed most of her work.

Several additional features of the agreements and the relationship between The Oregonian and regional correspondents are consistent with factors noted in the IRS's determination, and support the conclusion that The Oregonian had sufficient ability and right to control Barnard's work that Barnard is properly determined to have been an employee of The Oregonian under traditional agency law.  The Oregonian could accept or reject Barnard's pitches for story ideas.  Barnard had to be available to cover breaking news, or else The Oregonian had to know that Barnard was unavailable.  Barnard had to contribute original work.  Barnard was responsible for small equipment expenditures, but did not invest in capital and bore no financial risk beyond lost earnings.  Barnard received four weeks paid vacation. Barnard received a salary and reimbursement of business expenses. The Oregonian had the right to discharge Barnard.

The following working conditions and features of the relationship between Barnard and The Oregonian emphasized by defendants do not contradict the foregoing analysis and do not create disputed issues of material fact precluding summary

11 - ORDER

judgment on the question of whether Barnard was an employee of The Oregonian under traditional agency law.  Regional correspondent work required a high level of skill, and regional correspondents had a broad range of responsibilities, such as generating and pitching story ideas, conducting interviews, following leads and writing articles for submission.  In accordance with industry practice, regional correspondents pitched their story ideas to team leaders and members by providing weekly summaries of stories the correspondents were working on.  The purpose of the pitch was to facilitate early agreement on story development and work-up in order to ensure successful publication.  Barnard never wrote a story without prior approval because to do so would have wasted time.  The Oregonian had no power to require Barnard to abandon a story. Nor could The Oregonian prohibit Barnard from attempting to sell the story elsewhere.  Correspondents were free to write for other publications, and The Oregonian specifically told Barnard that she could do a travel piece for extra compensation.

The Oregonian had to know when Barnard was available and not available, because news doesn't happen on a schedule.  Barnard had various deadlines to meet and her boss expected to know in advance when she was unavailable.  The Oregonian did not specify hours that Barnard was required to work, track Barnard's time off, or provide Barnard with vacation time and paid holidays.

12 - ORDER

Barnard requested and received four weeks of paid leave each year.  Barnard determined when she would eat lunch and exercise. The requirement to report breaking news drove Barnard's schedule.

The regional correspondent agreements provided no guarantee of renewal and did not speak in terms of employment.  Barnard had to remit her own taxes and social security payments.  The Oregonian made unemployment tax payments on behalf of the regional correspondents under protest.  Upon the termination of Barnard's final regional correspondent agreement, neither The Oregonian nor its ERISA plan administrator advised Barnard that she had any rights to benefits as an employee under The Oregonian's ERISA plans, or that she had any right to continuing health insurance coverage.

Barnard took time off with adequate advance notice.  Barnard had no role in hiring, but was not prohibited from hiring an assistant.  Except during a furlough in 2002, The Oregonian paid Barnard approximately $35,000 to $38,000 per year in equal monthly installments.  Barnard did not receive employee benefits. With few exceptions, Barnard worked out of her home in Grants Pass, or at locations of her choosing.  The regional correspondent agreements label Barnard an independent contractor.

Because Barnard was an employee of The Oregonian under traditional agency law, she has standing to pursue her ERISA claim for benefits.

13 - ORDER

C.  Statute of Limitations

As the parties agree, a six-year limitations period applies to Barnard's ERISA claim.  <u>Chuck v. Hewlett Packard Co.</u>, 455 F.3d 1026, 1031 (9th Cir. 2006).  Barnard contends that her cause of action accrued when Whitehouse denied her claims for benefits. Defendants contend that the limitations period commenced when Barnard first executed an agreement repudiating benefits.  The district courts that have considered the question hold that the limitations period commences when a worker classified as an independent contractor first learns she is not entitled to benefits as a result of the classification.  <u>Brennan v. Metropolitan Life Ins. Co.</u>, 275 F. Supp. 2d 406, 409-10 (S.D.N.Y. 2003).  Each regional correspondent agreement expired by its own terms, necessitating subsequent agreements, including the provisions allegedly repudiating benefits.  The parties executed several agreements within the limitations period.  Therefore, the limitations defense cannot entirely defeat Barnard's claim.

D.  Waiver and Foreclosure of ERISA Benefits Claim

Defendants argue that Barnard waived any right to benefits under the plans by entering into the regional correspondent agreements.  She did not.  <u>Capital Cities/ABC, Inc. v. Ratcliff</u>, 141 F.3d 1405, 1410 (10th Cir. 1998).  Relying on <u>Capital Cities/ABC</u>, 141 F.3d at 1411, defendants further argue that the agreements are bilateral contracts that foreclose a claim for

ERISA benefits.  However persuasive, the court cannot square this argument with the Vizcaino case.  In the Ninth Circuit, if a worker is a common law employee, the label of independent contractor in an agreement becomes meaningless, as does an explication in the agreement of what follows from the label - no withholding, no benefits.  120 F.3d at 1010, 1013.  The regional correspondent agreements do not foreclose Barnard's ERISA claim.

    E.  Eligibility Under the Plans

        1.  1997 401(k) Plan

The parties dispute the standard of review that applies to the administrator's decision denying benefits under this plan. The plan confers "upon an administrative committee appointed by The Oregonian's board of directors the exclusive right to interpret the Plan provisions and to exercise discretion where necessary or appropriate in the interpretation, construction and administration of the Plan and to decide any and all matters arising thereunder . . . including . . . to determine eligibility for benefits." Whitehouse Decl., ex. 2 at 1, ¶ 1.05, at 2, ¶ 1.08, at 64, ¶ 12.02(b).  The plan further provides that in the absence of the committee, The Oregonian is the plan administrator.  Whitehouse Decl., ex. 2 at 64, ¶ 12.01(a).

Although the 1997 401(k) plan confers discretionary authority on the administrative committee, it does not unambiguously confer such authority on The Oregonian or the

15 - ORDER

administrator.  Ambiguities are resolved in favor of Barnard.
The court therefore applies the de novo standard of review to the
denial of benefits under the 1997 401(k) plan.

> Under Section 1.14 of the plan,
>
> "Employee" means any person employed on or after the
> Effective Date by the Company.
> * * *
> The definition of Employee does not include individuals
> engaged in any aspect of the preparation of written or
> photographic material submitted for publication in a
> newspaper (or magazine) who are not compensated on an
> hourly or salaried-basis and whose compensation is
> substantially based upon . . . a flat payment.

Whitehouse Decl., ex. 2 at 5-6.

Defendants argue that Barnard is not an employee within the
meaning of the plan because she was not compensated on an hourly
or salaried-basis and her compensation was based upon a flat
payment.  Citing to Black's Law Dictionary, defendants argue that
"salary" typically refers to sums intended to be paid as wages at
regular intervals on a yearly basis, a flat payment is not a type
of wages, and the regional correspondent agreements do not
contemplate salary payments.

Like ERISA's similar, nominal definition of the term
"employee," the first sentence of Section 1.14 of the 1997 401(k)
plan "is completely circular and explains nothing." Darden, 503
U.S. at 323.  At best, the circularly defined plan term
"employee" and undefined terms "salaried basis" and "flat
payment" are ambiguous, so that Barnard's reasonable

16 - ORDER

interpretations prevail.  Of course the plan term "employee" is reasonably construed to include an employee under traditional agency law, such as Barnard.  It is more reasonable to characterize the compensation scheme of the regional correspondent agreements as salary-based, than as flat payment-based.  Consistent with defendants' proffered definition of "salary," the agreements typically provide for sums to be paid at regular installments over year-long periods.  The agreements do not provide for a single payment.  Barnard does not fall outside of the plan's definition of employee for any reason asserted by defendants.

      2.  1999 Advance Pension Plan

Under the 1999 Advance Pension Plan, an employee is

> Any person employed, on or after the Effective Date, by
> the Employer or an Affiliate as a common law employee,
> as determined by such employer in accordance with
> applicable law governing employee-employer
> relationships, and who is receiving remuneration for
> personal services rendered to the Employer or an
> Affiliate.

Whitehouse Decl., ex. 8 at 10.

Regardless of the standard of review applicable to a denial of benefits under this plan, Barnard is not an employee within the meaning of the plan because The Oregonian never determined that Barnard was employed as a common law employee as required for coverage.  See Law v. Northwest Natural Gas Co., 2007 WL 1306663, *8 (D. Or.).

17 - ORDER

3.  Kaiser Senior Advantage Plan

Defendants cite to provisions in this plan whereby "Group delegates to Health Plan the discretion to determine whether a Member is entitled to the benefits . . . [and] authority . . . to review claims . . . and to construe [the agreement] to determine if the Member is entitled to benefits."  Whitehouse Decl., ex. 11 at 3.  If the citation is intended as an argument that the administrator had discretionary authority to construe the plan and determine entitlement to benefits so as to trigger review for abuse of discretion, the argument is rejected.  Defendants point to no plan provision conferring discretionary authority on the plan administrator.  The court finds none.[1]  The standard of review of denial of benefits under this plan is de novo.

To be eligible for this plan, a person must be either "[a]n employee of Group who works on a regularly scheduled basis, with a normal work week of 17.5 or more hours . . ." or "[e]ntitled to coverage under a trust agreement or employment contract . . ." Id. at 5.  Defendants argue that Barnard was not an employee who worked on a regularly scheduled basis or entitled to coverage under an employment contract.  The court agrees that Barnard was not entitled to coverage under an employment contract.

The administrator determined that Barnard is not an

---

[1]The plan further provides, "[n]either Group nor any Member is the agent or representative of Health Plan[,]" and "Group is the agent of each Member . . ."  Id. at 13.

employee, but did not expressly include in his written decision a
finding that Barnard was not regularly scheduled.  The words
"regularly scheduled" are ambiguous.  "Regularly" may mean "in a
regular manner," "on a regular basis" or "at regular intervals."
Merriam Webster's Collegiate Dictionary 985 (10th ed. 1996).  The
verb "schedule" may mean "to place in a schedule," "to make a
schedule of," or "to appoint, assign or designate for a fixed
time."  Id. at 1044.

Defendants dispute Barnard's assertion and the IRS's
determination that Barnard worked "full-time" for The Oregonian.
Defendants do not suggest, and the evidence does not support,
that Barnard worked less than 17.5 hours per week so frequently
as to render unreasonable a determination that she worked for the
Oregonian "on a regularly scheduled basis at least 17.5 hours per
week[.]"  Barnard produced evidence that she tracked and orally
reported "comp time" to her editor, and that the IRS determined
that she worked full-time.  Defendants did not provide evidence
of hours worked by Barnard to prove that Barnard did not work
sufficient hours to qualify for this plan.  Rather, defendants
argue that Barnard was an ineligible independent contractor who
did not work "on a regularly scheduled basis."  When the
ambiguous words "employee" and "regularly scheduled" are
construed in favor of coverage, this plan's eligibility
provisions must include traditional agency law employees such as

19 - ORDER

Barnard who performed work for The Oregonian under the regional correspondent agreements at issue in this case. It is reasonable characterize such persons as having been employees who worked on a regularly scheduled basis a normal work week of 17.5 hours or more. Barnard is not ineligible for the Kaiser Senior Advantage plan for the reasons asserted by defendants.

      4.  Oregon Dental Services Plan

Defendants identify no part of the ODS dental insurance plan conferring discretion upon the administrator to interpret terms or determine benefits. Finding none, the court reviews the administrator's denial of plan benefits de novo.

Under this plan, "'[e]ligible employees' are those persons who work for the group on a regularly scheduled basis at least 20 hours per week and who apply to and are accepted by Oregon Dental Service and are included in this policy." White Decl., ex. 3 at 3. As with the Kaiser Senior Advantage Plan, Barnard is not ineligible for the reasons provided by defendants when the ambiguous words "employees" and "regularly scheduled" are interpreted in favor of coverage.

      5.  Kaiser Foundation Health Plan

Defendants point to no provision of this plan conferring discretionary authority upon The Oregonian's plan administrator. Finding none, the court reviews the denial of plan benefits de novo.

20 - ORDER

Persons eligible for coverage under this plan must be either "[a]n employee of Group employed to work a minimum of 20 hours per week; or . . . [e]ntitled to coverage under[, inter alia,] a[n] . . . employment contract . . ."  White Decl., ex. 4 at 4. As discussed above, Barnard was an employee under traditional agency law, the undefined plan term "employee" is ambiguous, Barnard's interpretation that the term contemplates an employee under traditional agency law is reasonable, and the ambiguity is resolved in favor of Barnard.  Barnard is not ineligible for benefits under this plan for the reasons asserted by defendants.

6.  Regents Blue Cross Blue Shield Plan

Defendants do not contend that the Regents Blue Cross Blue Shield Plan conferred discretionary authority on The Oregonian's plan administrator to interpret the plan and determine entitlement to benefits under the plan.  Finding no such provision, the court reviews the denial of plan benefits de novo.

To be eligible under this plan "an employee must be permanently employed for a minimum of 20 hours a week."  While Barnard was an employee under traditional agency law, it would be unreasonable to classify her as permanently employed in light of the six-month and one-year term provisions of the regional correspondent agreements.  Barnard is therefore ineligible for benefits under this plan.

7.  Blue Choice PPO Plan

21 - ORDER

Defendants do not argue that the administrator had discretionary authority to interpret this plan or to determine entitlement to benefits.  Finding no such provision granting such authority, the court reviews the denial of benefits de novo.

Defendants argue that the guide to benefits for this plan limits enrollment to employees.  Whitehouse Decl., ex. 6 at 47-49.  As discussed above, the term "employee" is reasonably interpreted to include employees within the meaning of traditional agency law, Barnard is such an employee, and any ambiguity in the term is resolved in favor of Barnard.  Barnard is not ineligible for benefits under this plan for the reason asserted by defendants.

    8.  1976 - 1998 Pension Plan

Denial of benefits under this plan is reviewed de novo.  The provision that the administrator shall make a determination as to the right of any person to a benefit is not an unambiguous conferral of discretionary authority to the administrator.  See Sandy v. Reliance Standard Ins. Co., 222 F.3d 1202, 1204 (9th Cir. 2000).

Defendants contend that only employees may receive benefits under the 1976 Pension Plan, and Barnard was not an employee within the meaning of the plan.  Whitehouse Decl., ex. 7 at 6.  As discussed above, the circularly defined term "employee" is reasonably interpreted to include employees within the meaning of

22 - ORDER

traditional agency law, Barnard is such an employee, and any ambiguity in the term is resolved in favor of Barnard.  Barnard is not ineligible for benefits under this plan for the reason asserted by defendants.

    9.  Blue Cross Blue Shield Special MedicFill

Defendants do not argue that the administrator had discretionary authority to interpret this plan or to determine entitlement to benefits.  Finding no such provision in the guide to benefits submitted by defendants, the court applies the de novo standard of review.

Defendants argue that the guide to benefits limits enrollment to employees.  Whitehouse Decl., ex. 9 at 34.  As discussed above, the undefined term "employee" is reasonably interpreted to include employees within the meaning of traditional agency law, Barnard is such an employee, and any ambiguity in the term is resolved in favor of Barnard.  Barnard is not ineligible for benefits under this plan for the reason asserted by defendants.

    10.  Blue Cross Blue shield Traditional Overlay Plan

    Defendants do not argue that the plan administrator had discretionary authority to interpret this plan or to determine entitlement to benefits.  Finding no such provision, the court applies the de novo standard of review.

Defendants argue that Barnard is not an eligible employee

23 - ORDER

under the plan because the definition of employee expressly
excludes individuals engaged in the preparation of written
material who are compensated by flat payment and not on an hourly
or salaried basis.  See Whitehouse Decl., ex. 10 at 6-7.  The
argument is rejected for the reasons discussed in the analysis of
the similar provisions of the 1997 401(k) plan.  Barnard is not
ineligible for benefits under this plan for the reasons asserted
by defendants.

   F.  Further Proceedings

   Barnard contends that defendants are liable for plan
benefits as a matter of law based on the determination that she
was an employee of The Oregonian under traditional agency law.
Before it finally determines whether defendants are liable to
Barnard for benefits under the eight plans noted above, the court
desires more advice than provided in the parties' memoranda.  For
example, the court is not advised as to whether the 1999 Advance
Pension Plan, which appears effective prior to Barnard's
employment, superceded or replaced the 1976 Pension Plan.
Therefore, counsel are directed to confer regarding the effect of
the court's rulings on the cross motions for partial summary
judgment, and to file a joint status report or appropriate motion
within fourteen days of the date of this order.  Such filing must
specify any remaining disputed issues precluding a finding that
defendants are liable to Barnard for benefits under plans

identified above, other than the 1999 Advance Pension Plan and the Regents Blue Cross Blue Shield Plan.

<u>Conclusion</u>

Based on the foregoing and as provided herein, defendants' motion for summary judgment [#33], construed as a motion for partial summary judgment, is denied; plaintiff Elizabeth Barnard's motion for partial summary judgment [#38] is granted in part and denied in part; plaintiff Elizabeth Barnard's motion to strike [#64] is denied; within fourteen days of the date of this order, counsel for plaintiff Elizabeth Barnard and defendants shall file a joint status report or appropriate motion.

IT IS SO ORDERED.

DATED this __4th__ day of November, 2008.


<u>    s/Michael R. Hogan      </u>
United States District Judge

25 - ORDER